The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 421-0391, People of the State of Illinois v. James Curtis. Would counsel for appellant please state your name for the record. Good afternoon. My name is Roxanna Mason. I'm from the Office of the State Appellate Defender and I represent Mr. Curtis. Thank you. And for the appellee. Douglas Malcolm for the state. Thank you. You may proceed. May it please the court. This case involves two issues, ineffective assistance of counsel and a violation of the statutory right to confrontation. Time permitting, I would like to address both of these issues in this order. But before I do that, I'd like to briefly touch on a problem that underlies both of these issues. Evidence that was critical to Mr. Curtis's defense at his violation hearing was destroyed before that hearing could occur. And that is not Mr. Curtis's fault. Mr. Curtis did everything he could have in this case. When his accuser visited him in the jail, she told him two things. One, she told him that the reason she had made these allegations was that she believed that he was having an affair with another woman. And number two, she told him, threatened him, that if she learned that he had impregnated that other woman, she would ensure that he remained in custody. Counsel, excuse me, I have a question regarding something you just said, and that is the nature of this evidence. You indicated that you described it as critical, but is it exculpatory evidence or is it potentially useful evidence. It is exculpatory in nature. It both corroborates Mr. Curtis's version of events and it impeaches his accuser's version of events. It shows that she did not make these allegations by her own words. She did not make these allegations because they are true, but instead that she made these allegations because she believed that Mr. Curtis, her significant other at the time, was engaged in extracurricular activities with another woman. So it's exonerating in that sense. It may not be wholly and completely exonerating, but it is certainly of an exonerating nature. Particularly given the evidence in this case, it really was just Mr. Curtis's word against that of his accuser. There was no videotape of what happened in the home. The physical evidence sort of equally corroborated both versions of the event, except for the accuser's claim that Mr. Curtis had wielded a table at her. There were photographs taken of that table and the table is quite large, wood, appears to be quite heavy from the photographs that the police took. So that undermines the credibility and plausibility of her version of events to some extent. How about her injuries? Her injuries, she did have some minor injuries. Mr. Curtis did admit in his own version of events that some of the injuries to her arms were from when he was defending himself against her when she came after him with a hammer. In terms of the other injuries, they could have corroborated her version of events, but equally corroborated Mr. Curtis's testimony that she had gotten into a fight with a woman shortly before, a few days before the events that resulted in the police being called that day. What do we do with the fact that your client admitted by his plea to strangling this person? I mean, that's certainly a fact. He did plead guilty in that case. He did not only plead guilty, he pled guilty to strangling. Yes. Which, if I remember correctly, is an aggravating factor or a factor that's taken into account in how it's charged, how the offense is charged. Am I correct? I mean, yes, that's absolutely true. The issue presented regarding those charges that underlie the guilty plea, yes, he absolutely confessed to that when he pled guilty. And that was actually an issue that was litigated to some extent, whether that information could be used as evidence of a propensity to commit other crimes. And the trial court below ultimately ruled that it would not consider that as propensity evidence in this unique circumstance, that the statute that allows for propensity evidence simply doesn't cover these sorts of violation hearings. So I don't think it really weighs in, it should weigh into this court's determination for those reasons. Additionally, there's evidence here that this was something that, it was a very volatile relationship, and the judge who had to make the determination of whether Mr. Curtis violated his probation had to decide who to believe, Mr. Curtis or his accuser. And that's exactly what this tape would have helped the judge do. And I think it's really important to remember that this isn't something that Mr. Curtis came up with, you know, after he was found to have violated his probation at the last moment, you know, as sort of a last-ditch effort. It's something that he contacted his attorney immediately after the visit with his accuser. He's the one who reached out and tried to get his attorney to do something, and then it was just his attorney dropping the ball and doing nothing for 25 days that ultimately led to this video being destroyed. And that brings me to the ineffective assistance of counsel claim that we have here. You know, Steitel, Bryant, Tate, Upshaw, all the cases that are cited in the briefs talk about how failure to obtain and present this exculpatory evidence is objectively unreasonable. And that's what this evidence would have been here in this case, and counsel failed to do anything to obtain it. Is it clear from the record that your client told counsel what would show up on the video that he wanted him to try to obtain? It's clear from the record that he told him that it would be a conversation that was recorded between him and the accuser. Counsel makes an offer of proof at page 183 and 184 of the record and talks about what the video would have shown. So it's clear that at some point Mr. Curtis told counsel what it would have shown. The detail that he went into in the initial letter that he sent to counsel or in that initial phone call is not in the record. But we know at some point that counsel was made aware of it because counsel eventually asked the state for it and then eventually asked the court to make an adverse inference because of the destruction of the evidence. Well, you've made a point about the delay. And we don't know, he said, we don't know what he said to counsel and saying, hey, there's this video you really ought to take a look at. I'm not saying that excuses counsel. But if he had provided more detail, and we knew that it would be easier to determine any issues about any future issues about ineffective assistance to counsel or present issues. We know that that the defendant, at least at a, you know, at least some cursory level, told counsel that the nature of what was going to be in there we don't know if it was exactly word for word or not. But we also know that the council who represented Mr. Mr Curtis in these proceedings was the same attorney who had represented him at the police stage, and who was was well aware that there was a long history between the accuser and Mr Curtis of the accuser's word versus defendants word sort of case so any sort of impeaching information would be critical to the defense. And there's, excuse me, if we look at what the defendants testimony was under oath. That is really different than what he initially described was on this recording under oath he did not testify that Guerrero said that she lied to the police in relating what happened on October 7 and those events isn't that correct. I mean that's, he does. But he didn't use those specific words he said when he was asked, did she say anything to you about why she made the allegations he gave that reason but he was never specifically asked the question, did she tell you that she lied to the police unfortunately, the way that the questioning happened at the hearing, no, he did not specifically testify to that right he had the opportunity so how would this recording of it led to a different outcome. In this case, how would that recording, if it had been used, led to a different outcome. Well, I believe that the, you know, the reason that the judge made the finding that the judge ultimately did this, the judge said that he found Mr Curtis's version of events to be simply not credible. And had this tape been admitted into evidence, then that necessarily would have affected the circuit court judges evaluation of the credibility of the evidence because it would have shown that the accuser had misled the court during her testimony. And it also would have provided some corroboration since Mr. Mr Curtis's whole version of events was that the accuser had made up these allegations and, you know, had attacked him because she was upset that this bra was found in his bag, and she believed that he was Yeah, the trial court was aware of her, her history would have been able to take that into account and evaluating her testimony, or this this recording. Yes, there would have that would have existed. Um, but I mean that that sort of evidence you know the fact that she's a methamphetamine addict her criminal history those sorts of things. You know, do impeach her testimony and and you know kind of establish how weak the state's case was here that Mr Curtis had violated his probation. The only evidence that existed was her testimony and if if the factual basis of that testimony is impeached by her own statements. At some point, that's not enough to take away Mr Curtis's freedom. What about you have recorded phone calls. There, there were recorded phone calls in this case, or those about the October incident. Um, there was. There was some dispute over that there were there were phone calls in which Mr Curtis made some statements you know about, you know, in which he apologized in which he talked about, you know, having done something but he talked about it in a very vague manner. So it could be interpreted, I don't, I agree that it's not specific, the way that you'd like witness or anybody to say but when he says, essentially that he fucked up and he did that shit. That sounds pretty damning. I mean, it could very well be an admission that he struck the victim. Absolutely, it could be that, but it could also I mean if he's a man who's in a relationship with a woman, and he cheated on her. It could also very much be an admission that he had done that shit, and that he had effed up in that way. Well, what about him telling her to say that she was upset and called the police because she caught him kissing another man that he's trying to manufacture some reason for her to explain to the police why she called, as she did. And that that's that's a good point your honor I mean they're both of the both sides in this case, neither side is a perfect witness they both have credibility issues. But we have to look at the history of what happened in this case to really understand the context of his trying to get her to make that allegation that he kissed another man. And he provided an explanation for that in his testimony. When he told the court that in the underlying case the strangulation case that justice connect brought up before that the accuser had gone to the prosecutor's office at that time, and told them that she had falsified the original allegations, and the prosecutor's office did not believe her would not believe her recantations. So, he tried to sense he knew that her recanting the allegations for the, in his view, the truthful reason, you know, going in and telling them the story about how he cheated on her would not change the prosecutor's mind so yes he did something wrong. He told her to make up this lie, and that does go to his credibility, it is a problem. Council, excuse me, before your time is up. I'd like to talk to you for a minute about your argument and view of Taylor and young blood. And it's my understanding that it's your position that the United States Supreme Court case Arizona versus young blood did not overrule the part of Taylor that talks about the right of confrontation is that correct. In a very narrow sense yes your honor. Okay, but in taking that position, aren't you overlooking the fact that the right of due process encompasses the right of confrontation. No, and here's why your honor, there are there are two different rights of confrontation. There is in particularly in the the probation violation or general violation context, there's the constitutional right you know which comes from the Sixth Amendment but then comes down to us through the 14th Amendment, that's part of the process and if the Illinois legislature had never passed a statute on any of this. Yes, there would be a very limited due process right to confrontation and the state's argument in this case would be right, we'd be out of luck due to young blood and all the cases that the state sites. But in the probation violation conditional discharge violation context, there is also a statutory right to confrontation, and that is an absolute right to confrontation so in the reply brief when I cited the cases that talk about that such as Williams and Everhart and Davis versus Alaska that talk about how confrontation includes cross examination. If under the Illinois statute. There is this absolute right to confrontation and that includes an absolute right to cross examination and confrontation with impeachment evidence. So that's how it applies here. Is that absolute confrontation right is different from the due process right that the state talks about in its briefs. So are you saying that a defendant in a revocation proceeding is statutorily entitled to more protection that a defendant in a criminal trial would be. I wouldn't say more I would say different come and coming from a different source. So, if this were a criminal trial, he would Mr. Mr. Curtis would have been entitled to these protections in a different way, the, you know, the state would have been required to provide these things under the regular rules of discovery. So ultimately it would end in the same result. But here yes in this very narrow context, the right to confrontation that the Illinois legislature has provided is absolute that's what the court held And so in this very narrow context. That's, that's what how the procedural safeguard that the Illinois legislature has determined applies in this case will counsel with the case you're saying about the absolute right. I think you're misreading that the Supreme Court simply was saying that, unlike the federal law. There are conditions, sometimes in federal law for the probation or does not have the right to counsel, and there are certain conditions where the absolute right to confront does not exist. There's a condition on that. I think that's all they met. I don't think they met that there is a confrontation right that exceeds what's what is afforded in the sixth amendment of the United States Constitution. Is that what you're saying that that confrontation right in a criminal trial is different than the confrontation that the General Assembly provided for in the statute. No, no, no. No, no, that's not what I'm saying, Your Honor. I'm sorry if that's the impression that I gave what I'm saying is that the constitutional right to confrontation in a probation violation proceeding is a lesser right. You know that in that right would apply no matter what state we were in. There's a constitutional right that is a limited conditional constitutional right to confrontation in a probation violation proceeding. But in Illinois. We also have a statutory right to confrontation in these proceedings, and that right is greater than just the constitutional due process right to confrontation, but if this were a jury trial, then yes you know obviously there's a greater due process right in a jury trial to confrontation than there is in a, in one of these these violation proceedings. So really we're talking about three different rights. But then, where was there not a right to confrontation here I mean there was a right, she was she testified there was cross examination. I mean, what, what was he was deprived of his right to meaningful cross examination in that part of his part of his right. Part of his right to confrontation cross examination is his right to impeach, and because a state actor destroyed the piece of evidence that he would have impeached her with. He was not able to confront her. Well, you can see that there was no bad faith however here isn't that correct on the part of the state. Yes, but bad faith is a due process question, and the statutory right has nothing to do with due process. Well, that's goes back to the question I asked at the beginning, and you're saying, what your, what is your authority for that that the statutory right has nothing to do with due process. I see I'm out of time can I answer your question. Yes, please. Thank you justice connect that comes back to to people versus Lindsay that there are recognized that there are two different rights, there is the constitutional due process right to and the legislature has passed the statutory right, which provides greater protections. Thank you counsel. Thank you. We'll hear from you on rebuttal. Mr Malcolm you may proceed. May I please the court counsel. This case presents two issues. First, whether the state's failure to preserve a video recording of a of a visit between Brianna Guerrero and defendant or defendant was incarcerated violate defendants confrontation rights, and whether hearing counsel was ineffective for not obtaining a copy of that video recording. Prior to the hearing for the following reason. I'm sorry, I'm bothered by or I would like to know your response to the question I asked opposing counsel with regard to the right of confrontation and due process. She articulated that there was a different right of confrontation because it was statutory that was absolute whereas the due process right to confrontation was not. What is your position with regard to that. The context of a conditional discharge revocation hearing shows that the defendant is entitled to the minimum requirements of due process, and Illinois case law has cited for particular elements that constitute those minimum requirements. The third of those is the opportunity to present evidence and confront witnesses that's from people the steel, a first district case from 1996. Thus, in the context of a conditional discharge revocation hearing, whether that whether defendants entitled to the minimum requirements of due process that encompasses the defendants confrontation right. Therefore, I believe that your questions were well taken and and well made that, and it's the state's position that regardless of whether we're looking from the federal or the state side of things, the due process umbrella encompasses the, the confrontation rights, as at least in this context of a conditional discharge revocation hearing. If this had been perfected. Well, let me ask another way. Would you concede that counsel had a right to see that video on behalf of his client. No, Your Honor, the illness Supreme Court has found that prior to a conditional discharge revocation hearing a defendant is not entitled to discovery, and that discovery is not required in order to protect the defendants confrontation rights, that is, people do it. 1979, Illinois State Supreme Court case which my brief sites, and thus, the defendant was not entitled to discovery, thus defendant was not entitled to obtain a copy of the video recording. Well if he, if he made a specific request for it. And the offer of proof showed or indicated. It would be competing of the victim's testimony or position. Would a court have the power to grant. The court certainly has the power to grant it. Just because the defendant is not entitled to discovery at such a hearing does not mean that discovery cannot be granted. So do you concede that, or would you be willing to concede, which I don't like to ask counsel to do that. Had this specific request been made, and the trial court said, Oh, I understand exactly what you're asking for and I understand how this could be impeaching. If it were granted. And the video exists existed. And it showed what defended purported, it would show. Could the outcome of this case been different. Assuming all of the things that I know those are assumptions. It is the state's stance that defend that defendant would have then needed to make a bad faith showing, as is the state's position that the evidence in question was not material exculpatory, but rather potentially useful. Well, absent bad faith. Would he still be entitled to at least view it and decide whether he could get that admitted at the revocation or violation hearing. And what I'm really getting at is what we're talking about is not the sheriff, and not the state's attorney. We're actually talking about the defendants council that council should have acted quicker. Council as the sheriff says okay we'll preserve it. And then he goes through the process of trying to obtain it. Maybe gets it maybe doesn't. But there's at least a strong possibility that a trial court informed of it would give it to him. I'm not trying to set up a case for ineffective assistance council. I'm just trying to understand where we are. I apologize I'm not entirely sure I'm following your honor or understanding what exactly you're asking me directly. Well, that's probably my fault, not yours. I will tell you out loud. I don't know if that it will affect the result that it seems to me Council was negligent. Now whether it would have made a difference. We don't know. Because the evidence isn't presented before us. It would still be a matter of way. The evidence which trial court would be permitted to do. But I don't think there's anybody that would say this was a sterling performance by Council. If he was alerted to the fact that such a video exists. I would say that that's a fair assumption, or if you if you were the attorney for the defendant, would you have asked for that video. Once your counsel told you it existed. Of course you would have. That's not really a concession that's an opinion. But I'll leave you alone with that because I see by your smile that you probably would have answered yes. You may proceed with your argument. Thank you, Your Honor. Council I guess I'm going to jump in with another question. I mean, isn't the absence or didn't the absence of this video interfere with the defendants ability to cross examine, or as opposing counsel said to impeach Guerrero. No, Your Honor, because why not. Because the defendant also had attempted to impeach Guerrero with a letter that Guerrero allegedly wrote to defendant, while defendant was incarcerated which can say contained the same or similar statements that were allegedly contained on the video. And the state would contend that the defense mischaracterizes those statements in fact defendant. During the hearing testified that were merely apologized to him for telling law enforcement that he struck her and kicked kicked in her door apologizing for something does not mean that you did not do something. In fact, this testimony is consistent with the conclusion that Guerrero reported truthfully regarding what occurred. And then due to her strong feelings for defendant felt remorse or sympathy or empathy defendant was subsequently incarcerated for his actions. And as a result, the state urges the court to find that this evidence was not exculpatory, but potentially useful, thus requiring the bad faith showing, which has not been made. And are you, then, therefore arguing counsel that based on the defendant's testimony. We can't find that it was exculpatory or inculpate we can't find either way, just that it was potentially useful. Correct. Am I following your argument.  Okay. With regard to the discovery. Discovery. As you have indicated, according to case law doesn't apply to revocation of conditional discharge proceedings right. Yes, Your Honor. And yet the motion that was filed by defense counsel for a quote negative inference in quote alleged a discovery violation. Right. Yes, Your Honor. Okay, well, that's incongruent in the fact that you allege that there's a defendant alleges there's a discovery violation but the defense not even entitled to discover. So, I'm not. How does that tie into this, these issues before the court. So I know you mentioned that in your brief. Certainly, as, as I said to justice connect earlier, a defendant is not entitled to discovery that does not mean that a trial court cannot grant a discovery request. And so the defendant is certainly and defense counsel is certainly entitled to to request to make this filing. However, the trial court has the discretion to then deny or reject that further. Didn't the trial court say that had defense counsel requested a subpoena for the tape or an order for the recording tape to be preserved that that would have been an avenue to make sure that it was available. Yes, the trial court did. Okay. And what happened to case 2020 CF 672 I think that's the right number. That's the allegations in the petition to revoke the conditional discharge can say contained a criminal offense, which as I understand it was charged in 2020 CF 672. Am I right. Off the top of my head I cannot answer that information with an informed manner I can look into that and type up a memo if you would so desire. I don't think I desire that but what what I'm getting at is, as you well know, when a petition to revoke probation or conditional discharge in this case is filed based upon a criminal offense. There is that underlying criminal offense should the state choose to proceed on that and there's also then the petition to revoke. Right. Yes, Your Honor. Okay, if I'm under faith, understanding the defendants argument. If the state had prosecuted on the underlying criminal offense and that is 2020 CF 672, because it was charged apparently. Then in that case, defense counsel would have had to show that the video was something more than potential potentially useful would have had to show that it tended to exonerate. Otherwise, the ruling would be that there's no confrontation violation, but because the criminal case wasn't prosecuted and we're proceeding under the petition to revoke conditional discharge. That the statute allows this negative inference, I guess, because the potentially useful versus exoneration is no longer applicable in a revocation proceeding, only in the criminal charge itself. Am I misstating anything there is that your understanding of the defendants argument. If it isn't, go ahead and say so. At this stage, I do not feel confident saying one way or the other, the veracity of what you said, I apologize, I did my best to follow but at this point in time, my research did not encompass that particularly. Okay, if I misstated some something that wasn't because of the lack of veracity I just just to clarify. Anyway, go ahead. Where the states is not obligated to preserve evidence, no error occurs, where the where the evidence is subsequently destroyed pursuant to standard operating procedures. As previously stated, the state was not obligated to preserve this video recording because the defendant was not entitled to discovery prior to this hearing. And the Illinois Supreme Court has found that a defendant statutory right to confrontation is not violated during conditional discharge hearing due due to a lack of discovery. Therefore, because the state was not obligated to preserve this evidence, the subsequent failure to preserve the evidence did not violate defendants confrontation clause right. Justice Zenoff did a very good job of covering my point about due process encompassing the confrontation right because those rights are joined one falls under the other defendants defendants efforts to bifurcate the people retailer holdings is unavailing in the instant case. Even if this court finds that people retailers confrontation rights holding remains good law in this state for the purposes of conditional discharge revocation hearings. The two rights, one nests under the other, and they cannot be distinguished such that that reasoning does not. Further, even if this case, even if this court finds that the confrontation rights holding of Taylor remains good law. People will be Taylor is distinguishable from this case in Taylor, the evidence in question was consumed prior to the indictment, such that when the defendant was ultimately charged defendant could not independently test that evidence, such that defendant was at a substantial evidentiary disadvantage here following the destruction of the video recording, both the state and defendant were able to present the testimony of participants of that conversation defendant testified to his recollection of the visit Guerrero testified to her recollection of the visit, and both parties stipulated to what the corrections officer who oversaw the visit would have testified to had the corrections officer appeared in the hearing, thus, no substantial evidentiary disadvantage was created, and therefore this case is distinguishable from people retailer. For these reasons, this court should affirm the trial courts judgment. And unless this unless this court has questions regarding the ineffective assistance of counsel issue, the state will rest on its brief. I see no questions are there any. I have no further questions at this time, the state of this time. Thank you. Thank you. Miss Mason rebuttal.  And that has to do with the fact that Mr. Curtis did not testify specifically at the hearing that he that that his accuser had explicitly told him that she lied to police and that that is a true fact. However, I would direct the court, specifically to page 291 of the transcript, where Mr. Curtis was being asked about that matter. And at first, his counsel asked him, what did she say, and he starts to explain, you know, she was drilling me on the fact who was the girl. Why did I bring that girl into the house and she was asking me why I was cheating on her. Was that my baby she was pregnant with and then counsel asked him specifically did she talked to you about October 7 at all. He responds that she did counsel asks what did she say. And Mr. Curtis started to answer, he said she was like she was sorry for telling the police that I hit her, and she was sorry for everything that happened, telling the police that I kicked in the door, and, and then counsel cut him off and didn't allow him to answer to finish his answer to that question. Instead, specifically directing him to answer whether she made any statements about why she had said those things to police. And which then Mr. Curtis, you know, told the told counsel in the court, why she had made those statements what she had told him about why she made those statements so his opportunity to give a full detailed recitation of exactly what she told him during that that meeting was cut off by his counsel. That same counsel made an offer of proof to the court prior to the hearing beginning at page 183 through 184 of the record and at that time counsel detailed exactly what it was that he believed occurred during that confirmation that conversation and that included the allegations that she admitted that she had fabricated the allegations to police counsel never gave Mr. Curtis the opportunity to put that into his testimony. That's why it's not there but we do have. Is that a new claim of ineffective assistance that you're making on appeal now. No, I haven't made before. No, no, I just wasn't you're saying it was ineffective process or direct examination is how much you're saying, I mean, it may well be but no I'm not raising that new argument now. I just want to give that. Well, the problem, I think it's a problem because you just, and I've got it in front of me as well. You just read with the testimony was and defendants never said that she was, she had lied before. And what she had told the police, she used to explain why she told because she was mad about he was cheating on her, but that doesn't mean that or doesn't suggest that it didn't happen. He could have testified to that and I'm reading through here. I don't see where defense counsel kept him from saying that he just didn't say it. I think it's a problem. Well defense counsel did cut him off though we have the indication from the court reporter, where he says, and and there's the dash. And then we have the question from counsel so the the court reporter did not take that as a period, a finished sentence here, moving on to the next question there was an interruption there, and counsel never went back and gave him that opportunity. That being said, the reason I bring this I think that the reason counsel probably cut him off because he wasn't saying what counsel wanted him to say, because he was saying, here's what he said she was like she was sorry for telling the police that I hit her, and she was sorry for everything that happened, telling the police that I kicked in the door, and looks like to me counsel's thinking well I'm not getting the response I want. So he moves on with the question, did she make any statements about why she said those things to the police, that was his opportunity to say what you say the video video would have showed but he didn't, he didn't testify to that. It's just not there. Well, he did testify as to why she said the reason that she gave him for telling the police that, and that by giving that testimony, it's saying that's the reason why she said this not because it happened but because she believed that he'd been shooting on her but we also have the he told the court that's what defendant told me, because he didn't see the video obviously because it got destroyed. Right. Well, there's a difference there isn't there. There's a difference there and I see him out of time. You may answer. And that's the problem. Council, drop the ball and because Council drop the ball. Nobody has the video and nobody can answer these questions. If Council had gotten the video, and then just not presented it. We could go get the video, look at the video and see was counseling effective for not presenting this yes or no. But because Council, drop the ball even more, and didn't even bother to go get it. Now we can't do that. Now we can't prove that to the court and that's not Mr Curtis's fault. It's Council's fault. And that was ineffective. I want to ask one more question I want you to answer it briefly. What do we make of the fact that the victim disputes the fact that she ever wrote these letters, i.e. if the trial court believes her that really undermines all the credibility that the defendant could possibly have creating those letters now the trial court could say well I don't know what, you know, she's going by it doesn't, it's not my handwriting. The trial court doesn't have to believe that. But if the trial court did it would be assessing credibility, wouldn't that weigh heavily against your client. Well, the, the accuser admitted that she had sent the photographs, but denied sending the letters. And yes, if the judge believed her, then that, you know, would absolutely be go against the defendant's credibility, but we have evidence that the accuser lied to the court. The, the only disinterested party in this whole case was the, the corrections officer who testified by stipulation that was entered by the parties and the accuser testified under oath that she and Mr Curtis did not break up during the conversation. And the one and only thing that the jail guard remembered from the conversation was that they definitely broke up. The corrections officer has no reason to lie about that, if anything, the nature of the corrections officers employment would make them a traditionally more pro state witness. But the accuser was lie. For that reason and all the other reasons we've discussed, I asked this court reverse the judgment of the court below. Thank you. Thank both counsel for your arguments and we'll take this matter under advisement.